UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEANNINE TATER, | CASE NO. C19-0158JLR |
| Plaintiff, | ORDER |
| v. | |
| OANDA CORPORATION, et al., | |
| Defendants. | |

## I.  INTRODUCTION

Before the court are four motions:  (1) Defendants OANDA (Canada) Corporation ULC ("OANDA Canada") and OANDA Corporation's (together with OANDA Canada, the "OANDA Defendants") motion to dismiss *pro se* Plaintiff Jeannine Tater's complaint (MTD (Dkt. # 10)); (2) Ms. Tater's motion for extension of time to oppose the motion to dismiss and for court-appointed counsel (*see* 6/10/19 Mot. for Extension (Dkt. # 26)); (3) Ms. Tater's motion for extension of the deadline to join additional parties (*see* 7/30/19 Mot. for Extension (Dkt. # 34)); and (4) Ms. Tater's motion to compel production of

documents (*see* Mot. to Compel (Dkt. # 36)).[1]  The court has considered the motions, the

parties' submissions in support of and in opposition to the motions, the relevant portions

of the record, and the applicable law.  Being fully advised,[2] the court DENIES Ms.

Tater's motion for extension of time to oppose the motion to dismiss and for

court-appointed counsel, GRANTS the OANDA Defendants' motion to dismiss, and

DENIES as MOOT Ms. Tater's motion for extension of the deadline to join additional

parties and her motion to compel production of documents.

## II.  BACKGROUND

### A.  Factual Background

The OANDA Defendants provide a desktop platform for internet-based foreign

exchange trading and currency services information.  (Martell Decl. (Dkt. # 12) ¶ 2.[3])

Ms. Tater alleges that she lost $380,000 trading currency on the OANDA Defendants'

platform in 2011 and 2012.  (*See* Am. Compl. (Dkt. # 1-2) at 5-6.)  Although Ms. Tater's

complaint is difficult to decipher, she appears to claim that her losses resulted from

---

[1] Although Ms. Tater did not title her filings a "motion for extension," "motion to compel," or "motion to appoint counsel" (*see* Dkt. ## 26, 34, 36), the court construes the Ms. Tater's *pro se* requests for relief liberally.  *See Bernhardt v. Los Angeles Cty.*, 339 F.3d 920, 925 (9th Cir. 2003) ("Courts have a duty to construe *pro se* pleadings liberally, including *pro se* motions as well as complaints." (citations omitted)).

[2] Neither Ms. Tater nor the OANDA Defendants request oral argument (*see* MTD; 6/10/19 Mot. for Extension; 7/30/19 Mot. for Extension; Mot. to Compel), and the court concludes that oral argument is unnecessary to its dispositions of the motions, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[3] As discussed below, the court decides this motion on the OANDA Defendants' motion to dismiss for *forum non conveniens*.  *See infra* § III.B.  The court may consider matters outside the pleadings on a motion to dismiss for *forum non conveniens*.  *Putz v. Golden*, No. C10-0741JLR, 2010 WL 5071270, at *4 (W.D. Wash. Dec. 7, 2010).

misrepresentations made by the OANDA Defendants, problems with the OANDA Defendants' platform, and improper actions taken by the OANDA Defendants on Ms. Tater's account.  (*See id.* at 5-7, 9-10.)

It is not clear from the face of Ms. Tater's pleadings whether Ms. Tater engaged in foreign exchange trading through an account with OANDA Corporation or OANDA Canada.  Ms. Tater alleges that she applied for an account with the "New York affiliate" of the OANDA Defendants on February 26, 2011, so that she could "exchange Canadian for USD."  (*See id.* at 5.)  According to Ms. Tater, her "USA account" was "approved" on March 3, 2011.  (*See id.* at 5, 9.)  The OANDA Defendants claim, however, that Ms. Tater never completed the process of setting up her account with OANDA Corporation— the entity responsible for all U.S. OANDA accounts.  (*See* Martell Decl. ¶¶ 2-3.) Although the parties dispute whether Ms. Tater ever opened a valid U.S. account with OANDA Corporation, even if Ms. Tater is correct that she had a valid account, the OANDA Defendants assert that Ms. Tater never funded a U.S. account with OANDA Corporation or transacted any business through OANDA Corporation (*see id.* ¶¶ 3-4), and Ms. Tater does not dispute those allegations (*see generally* Am. Compl.).

Instead, the parties appear to agree that the transactions at issue in this case were conducted through a "FXTrade" account that Ms. Tater created with OANDA Canada. (*See* Am. Compl. at 9 ("On March 6, 2011 defendant told plaintiff to reenroll [through] Oanda Canada . . . . On March 9, 2011 Defendant approved Plaintiff for Canadian Account Number #33023[.]"); Therrien Decl. (Dkt. # 13) ¶ 3 ("On March 7, 2011, Plaintiff Jeannine Tater opened a currency trading account with OANDA Canada by

signing up for a foreign exchange account, known as an 'FXTrade account.'"); *id.* ¶ 10

("Between March 2011 and October 2, 2012, Plaintiff engaged in currency exchanges

and foreign exchange trades through her OANDA Canada FXTrade account."); *id.* ¶ 13,

Ex. C at 2-5 (email from Ms. Tater sent to OANDA Canada detailing the problems she

experienced using the FXTrade platform).)  Ms. Tater opened her OANDA Canada

account using a Canadian address and a Canadian email address.  (Therrien Decl. ¶ 8;

Am. Compl. at 5.)

In order to create an FXTrade account with OANDA Canada, Ms. Tater had to

click through and agree to the terms of the OANDA Canada FXTrade Customer

Agreement (Therrien Decl. ¶ 4, Ex. A ("Customer Agreement")) that was in place at the

time she created her account.  (*Id.* ¶¶ 4-6.)  The first paragraph of the Customer

Agreement states this obligation explicitly:

> **IMPORTANT, PLEASE READ CAREFULLY: In order to open and operate an FXTrade account with OANDA (Canada) Corporation ULC ("OANDA"), you (the "Customer") must agree to the terms and conditions of this Customer Agreement (the "Agreement"). Please read this Agreement in its entirety. If you agree to be bound by its terms and conditions, click "I Agree" at the end of this Agreement and continue on with the registration process.**

(Customer Agreement at 2.)  The Customer Agreement also contains the following

choice of law and forum-selection clause:

> **Law and Venue.**  This Agreement shall be governed by the laws of the Province of Ontario, without giving effect to any conflict of laws doctrine that would interfere or prevent the application of this provision.  Except as provided in OANDA's optional arbitration agreement, any judicial or administrative action or proceeding arising directly or indirectly under this Agreement, or in connection with the transactions contemplated by this Agreement, whether brought by you or OANDA, shall be held, at the sole

discretion of OANDA, within the Judicial District of York in the Province of Ontario exclusively. You hereby consent and submit to, and waive any objections you may have to such venue, and you further agree to waive and forego any right you may have to transfer or change the venue of any action or proceeding encompassed by this Agreement.

(*Id.* at 14, ¶ 41(f).) OANDA Canada's headquarters are in Toronto, Canada, which is located in the Judicial District of York in the Province of Ontario. (Ryan Decl. (Dkt. # 11) ¶¶ 2-3.)

**B.  Procedural History**

On October 8, 2018, Ms. Tater initiated this action by filing a complaint in Whatcom County Superior Court that named "Oanda Corp," "OandaFX," "Oanda Global Transfer" and several John and Jane Does as defendants. (*See* Compl. (Dkt. # 1-1) at 4-5.) On December 31, 2018, Ms. Tater amended her complaint and named OANDA Corporation, OANDA Canada, and several John and Jane Does as defendants. (*See* Am. Compl. at 4-5.) The gravamen of Ms. Tater's complaint is her claim that she lost $380,000 while foreign exchange trading on the OANDA Defendants' platform due to various wrongs committed by the OANDA Defendants. (*See id.* at 5-7.) Based on those allegations, Ms. Tater pleaded causes of action for "[n]egligence, [m]isrepresentation, and/or [f]raud"; breach of contract; and intentional infliction of emotional distress. (*Id.* at 6-7.)

The OANDA Defendants removed this case on February 1, 2019 (*see* Notice of Removal (Dkt. # 1)) and filed a motion to dismiss on February 8, 2019 (*see* MTD). The OANDA Defendants raise three arguments in their motion to dismiss: (1) this case should be dismissed on *forum non conveniens* grounds pursuant to the forum-selection

clause in the Customer Agreement; (2) the court lacks personal jurisdiction over OANDA

Canada; and (3) Ms. Tater's complaint should be dismissed under Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim. (*See* MTD at 8-17.)

The OANDA Defendants' motion to dismiss was originally noted for March 15,

2019, which meant that Ms. Tater's opposition papers were due on March 11, 2019. *See*

Local Rules W.D. Wash. LCR (7)(d)(3). To accommodate Ms. Tater, the OANDA

Defendants voluntarily re-noted the motion to May 3, 2019 (Notice (Dkt. # 16) at 2),

which meant that Ms. Tater's response date moved to April 29, 2019, s*ee* Local Rules

W.D. Wash. LCR (7)(d)(3). On April 15, 2019, Ms. Tater filed a pleading that the court

construed as a motion for extension of time to respond to the OANDA Defendants'

motion. (*See* 4/15/19 Mot. for Extension (Dkt. # 22).) In that motion, Ms. Tater

requested an extension on her response date until "after the July 4th holidays" due to

medical complications from a recent surgery. (*See id.* at 2-3.) The court granted Ms.

Tater's motion in part and extended her response deadline to June 10, 2019. (5/3/19

Order (Dkt. # 25) at 4.) The court concluded that Ms. Tater was entitled to an additional

six weeks to file her opposition instead of the 10 weeks she requested because Ms. Tater

had "already received a substantial extension of time to file her motion to dismiss

response." (*Id.*) The court also advised Ms. Tater that her status as a *pro se* litigant did

not alleviate her obligation to litigate her case in accordance with the Federal Rules and

directed Ms. Tater to the Western District of Washington's online materials aimed at

assisting *pro se* litigants. (*See id.* at 6.)

Instead of filing a response on June 10, 2019, Ms. Tater filed a motion for

extension of time to respond to the OANDA Defendants' motion to dismiss and for court-appointed counsel on the date her opposition was due. (*See* 6/10/19 Mot. for Extension.) Ms. Tater requests an extension of time to file her response to the motion to dismiss so that she can have additional time to secure legal representation. (*Id.* at 1-3.) She alleges that she has made efforts to secure counsel but has not yet been successful in finding representation. (*Id.*) Additionally, Ms. Tater asks the court to assist her in acquiring an attorney. (*Id.* at 3.) The OANDA Defendants oppose Ms. Tater's request for an extension on the grounds that she has already been afforded sufficient time to respond to the motion to dismiss. (*See* OANDA Resp. & Reply (Dkt. # 28) at 3-7.)

While the OANDA Defendants' motion to dismiss and Ms. Tater's motion for extension of time and to appoint counsel were pending, Ms. Tater filed two additional motions. First, on July 30, 2019, Ms. Tater filed a motion for extension of the deadline to join additional parties. (*See* 7/30/19 Mot. for Extension.) In that motion, Ms. Tater alleges that she needs an extension on the deadline to add parties because she had requested discovery from the OANDA Defendants and that discovery may include information needed to add additional parties to this action. (*Id.* at 1-2.) Second, on July 31, 2019, Ms. Tater moved to compel the OANDA Defendants to produce her OANDA client file and information pertaining to insurance carried by the OANDA Defendants. (*See* Mot. to Compel at 1-2.) Ms. Tater emailed a handful of rudimentary discovery requests to the OANDA Defendants on July 5 and July 30, 2019, but received no response until after she filed her motion to compel. (*See id.*; Discovery Requests (Dkt. ## 36-2, 36-3); Lee Aff. (Dkt. # 38) ¶ 2 (acknowledging that the OANDA Defendants did

not respond to Ms. Tater's discovery requests until August 1, 2019).)  The OANDA

Defendants opposed both motions.  (*See* 8/7/19 Resp. (Dkt. # 37).)

The court now considers the OANDA Defendants' motion to dismiss, Ms. Tater's

two motions for extension, and Ms. Tater's motion to compel.

### III.    ARGUMENT

**A.    Motion for Extension of Time to Respond and to Appoint Counsel**

The court first considers Ms. Tater's motion for extension of time to respond to

the motion to dismiss and to appoint counsel because that motion bears on the OANDA

Defendants' motion to dismiss.  Under Federal Rule of Civil Procedure 6(b)(1), when an

act must be done within a specified time, the court may extend the time for good cause if

the request for an extension is made before the original time or its extension expires.  *See*

Fed. R. Civ. P. 6(b)(1)(A).  Because Ms. Tater filed her motion to for extension of time

on the date that her opposition was due (*see* 5/3/19 Order at 4 (ordering Ms. Tater to

oppose the motion to dismiss by June 10, 2019); 6/10/19 Mot. for Extension), a "good

cause" standard applies to Ms. Tater's request.  Fed. R. Civ. P. 6(b)(1)(A).  "'Good

cause' is a non-rigorous standard that has been construed broadly across procedural and

statutory contexts." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir.

2010).  Moreover, Rule 6(b)(1) is "liberally construed to effectuate the general purpose of

seeing that cases are tried on their merits." *Id.* at 1258-59 (citations omitted).

Liberally construed, Ms. Tater's motion for an extension of time requests that her

June 10, 2019 deadline for her opposition to the OANDA Defendants' motion to dismiss

be extended until:  (1) Ms. Tater retains counsel, (2) an undefined point in the future

when "the other issues in this lawsuit" would be adjudicated, or (3) August 6, 2019. (*See* 6/10/19 Mot. for Extension at 3.) Ms. Tater claims that an extension is warranted because she needs additional time to obtain representation in this case. (*See id.* at 1-3.) Ms. Tater filed her complaint in Whatcom County Superior Court on October 8, 2018. (*See* Compl.) The OANDA Defendants removed on February 1, 2019, and filed their motion to dismiss on February 8, 2019. (*See* Notice of Removal; MTD.) In March, the OANDA Defendants voluntarily provided Ms. Tater seven additional weeks to file her opposition. (*See* Notice.) In May, the court gave Ms. Tater six additional weeks to oppose the motion. (*See* 5/3/19 Order at 4.) All told, Ms. Tater had more than four months to oppose the OANDA Defendants' motion, and it has been 11 months since she initially filed her complaint. Ms. Tater has been afforded sufficient time to find counsel or file her own opposition absent assistance from counsel. Thus, the court finds that there is not good cause to grant another extension for Ms. Tater to file an opposition to the OANDA Defendants' motion to dismiss.[4] *See Karboau v. Clark*, No. C12-5045BHS-KLS, 2012 WL 5350072, at *1 (W.D. Wash. Oct. 30, 2012) (denying *pro se* motion for extension of time to retain counsel because plaintiff "has been granted multiple

//

---

[4] Additionally, the court notes that Ms. Tater's reply in support of her motion for extension of time includes arguments and exhibits in response to the OANDA Defendants' reply in support of their motion to dismiss. (*See* Reply ISO Mot. for Extension (Dkt. # 29) at 1-2; Exhibits (Dkt. # 30).) Because those materials were filed in response to the OANDA Defendants' reply on a different motion, they are improper surreply materials and the court declines to consider them in its evaluation of the OANDA Defendants' motion to dismiss. *See Nguyen v. The Boeing Co.*, No. C15-0793RAJ, 2016 WL 2855357, at *8 (W.D. Wash. May 16, 2016) ("Surreplies are permitted solely to strike material contained or attached in a reply brief and only if certain timing and formatting requirements are met." (citing Local Rules W.D. Wash. LCR 7(g))).

extensions and has had more than sufficient time to retain an attorney in this matter").

Ms. Tater's motion for an extension of time also includes a one-line request that the court assist Ms. Tater in finding legal representation. (06/10/19 Mot. for Extension at 3.) Generally, civil litigants have no right to counsel. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). However, a court may under "exceptional circumstances" appoint counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(e)(1). *Id.* Ms. Tater is not proceeding *in forma pauperis* and does not allege that she is indigent. (*See generally* Dkt.; 6/10/19 Mot. for Extension.) Thus, section 1915 does not apply to her claim. *See, e.g.*, *Scott v. Cunningham*, No. C11-5509BHS-KLS, 2012 WL 529549, at *3 (W.D. Wash. Feb. 16, 2012) (declining to appoint counsel for non-indigent *pro se* plaintiff ); *Johnson v. Cate*, No. 1:10-CV-0803-AWI-MJS, 2014 WL 6978324, at *6 (E.D. Cal. Dec. 9, 2014) (declining to apply 28 U.S.C. § 1915(e)(1) to a *pro se* plaintiff who was not proceeding *in forma pauperis*). Moreover, even if section 1915(e)(1) could apply, the court would decline to exercise its discretion to appoint counsel for Ms. Tater because her case does not present the kind of "exceptional circumstances" required for the court to appoint counsel. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) (noting that a finding of exceptional circumstances requires an evaluation of both the likelihood of success on the merits and the ability of the plaintiff to articulate his or her claims *pro se* in light of the complexity of the legal issues involved).

For the foregoing reasons, the court DENIES Ms. Tater's motion for an extension of time to respond to the OANDA Defendants' motion to dismiss and for appointment of counsel.

**B.      The OANDA Defendants' Motion to Dismiss for *Forum Non Conveniens***

The court next considers the OANDA Defendants' motion to dismiss for *forum non conveniens*.  (*See* MTD at 8-14.)  Although the court recognizes that the OANDA Defendants also allege that there is no personal jurisdiction over OANDA Canada, courts may consider the question of *forum non conveniens* without first deciding whether the court has subject matter or personal jurisdiction.  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007) ("[A] court need not resolve whether it has authority to adjudicate the cause (subject-matter jurisdiction) or personal jurisdiction over the defendant if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case.").  Although the *Sinochem* Court noted that a court should address jurisdiction first if the court can "readily determine" that it lacks jurisdiction, *Sinochem Int'l*, 549 U.S. at 436, the court notes that the OANDA Defendants only moved to dismiss OANDA Canada on jurisdictional grounds (*see* MTD at 14-15).  Given that the OANDA Defendants' motion to dismiss for *forum non conveniens* applies to this action as a whole (*see id.* at 8 ("[T]he Court should dismiss this case for forum non conveniens.")), consideration of *forum non conveniens* before reaching the jurisdictional question presented by OANDA Canada is the "less burdensome course," *see Sinochem Int'l*, 549 U.S. at 436.

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."  *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013).  A motion to dismiss for *forum non conveniens* based on a forum-selection clause proceeds in two steps.  *See Yei*

*A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086-87 (9th Cir. 2018).

First, as a threshold matter, courts must interpret the forum-selection clause at issue and determine whether it applies to the allegations in the complaint. *See id.* at 1086. In interpreting a forum-selection clause, federal courts apply federal law and "look for guidance to general principles for interpreting contracts." *Id.* (citations and internal quotations omitted). Second, if the forum-selection clause applies to a dispute, courts consider whether the forum-selection clause is enforceable under the doctrine of *forum non conveniens*. *See id.* at 1087.

In resolving a motion to dismiss for *forum non conveniens*, the court may weigh evidence and consider matters outside the pleadings. *Putz*, 2010 WL 5071270, at *4. Where an applicable forum-selection clause is at issue, the Plaintiff bears the burden to show that the clause is unenforceable. *See Atl. Marine*, 571 U.S. at 63.

By its terms, the forum-selection clause in the Customer Agreement applies to "any judicial . . . action . . . arising directly or indirectly under this Agreement, or in connection with the transactions contemplated by this Agreement, whether brought by you or OANDA." (Customer Agreement at 14, ¶ 41(f).) The forum-selection clause also states that any such action "shall be held . . . within the Judicial District of York in the Province of Ontario exclusively." (*Id.*) Taken together, this language indicates that if Ms. Tater's complaint arises under the Customer Agreement or in connection with the transactions contemplated by the Customer Agreement, then venue in the Judicial District of York is mandatory. *See Lavera Skin Care N. Am., Inc. v. Laverana GmbH & Co. KG*, No. C13-2311RSM, 2014 WL 7338739, at *5 (W.D. Wash. Dec. 19, 2014) (noting that

the *Atlantic Marine* rubric applies where forum-selection clauses are mandatory, as opposed to permissive).

Because the forum selection clause is mandatory, the application prong of the *forum non conveniens* analysis turns on whether Ms. Tater's complaint "aris[es] directly or indirectly under this Agreement, or in connection with the transactions contemplated by this Agreement." (Customer Agreement at 14, ¶ 41(f).) Ms. Tater acknowledges that she opened an OANDA Canada account at the direction of the OANDA Defendants. (*See* Am. Compl. at 9.) To open an OANDA Canada account and use that account for foreign exchange trading, Ms. Tater had to click through and agree to the Customer Agreement. (Therrien Decl. ¶¶ 3-6; Customer Agreement at 2 ("In order to open an operate an FXTrade account with OANDA (Canada) . . . , you . . . must agree to the terms and conditions of this Customer Agreement[.]").) Given that the Customer Agreement controlled the entirety of Ms. Tater's use of the OANDA Canada platform (*see generally* Customer Agreement), if Ms. Tater used her OANDA Canada account to make the foreign exchange trades at issue in her complaint, the court has little difficulty concluding that her complaint "aris[es] directly or indirectly under [the Customer Agreement], or in connection with the transactions contemplated by [the Customer Agreement]," (*see id.* at 14, ¶ 41(f).

Ms. Tater's complaint clearly alleges that she lost $380,000 foreign exchange trading on the OANDA Defendants' platform. (Am. Compl. at 5-7.) The OANDA Defendants submitted declarations stating that all of Ms. Tater's transactions were conducted through her OANDA Canada account. (*See* Therrien Decl. ¶¶ 3, 10 (stating

1   that Ms. Tater opened an OANDA Canada account on March 7, 2011, and used that

2   account for currency exchanges and foreign exchange trades between March 2011 and

3   October 2012); Martell Decl. ¶¶ 3-4 (stating that Ms. Tater never funded a U.S. account

4   with OANDA Corporation and had no business relationship with OANDA Corporation).)

5   Ms. Tater does not refute that evidence.  (*See generally* Am. Compl. at 5-7, 9-10.)  In

6   fact, Ms. Tater appears to allege that the she signed up for an account with OANDA

7   Canada so that she could trade with the benefit of a $1,000,000 insurance policy that was

8   only available through OANDA Canada.  (*See id.* at 5, 9.)  Also, the dates of events listed

9   in her complaint are generally consistent with the OANDA Defendants' allegation that

10  Ms. Tater traded with OANDA Canada between March 2011 and October 2012.

11  (*Compare* Am. Compl. at 5-6, 9 *with* Therrien Decl. ¶ 10.)  Finally, the OANDA

12  Defendants submitted an email from Ms. Tater in which she stated that she filed a

13  complaint with the Investment Industry Regulatory Organization of Canada through the

14  British Columbia Securities Commission.  (*See* Therrien Decl. ¶ 14, Ex. D.)  Thus,

15  despite the opaque nature of Ms. Tater's allegations, the parties appear to agree that the

16  trades at issue were made through Ms. Tater's OANDA Canada account.

17       Because Ms. Tater used her OANDA Canada account to make the trades at issue,

18  her complaint "aris[es] directly or indirectly under [the Customer Agreement], or in

19  connection with the transactions contemplated by [the Customer Agreement]."

20  (Customer Agreement at 14, ¶ 41(f).)  Thus, the forum-selection clause applies to this

21  dispute, which means that Ms. Tater was contractually required to file this action in "the

22  //

Judicial District of York in the Province of Ontario."[5] (*Id.*)

Because the forum-selection clause applies to this dispute, the court turns to the enforceability of the clause under *Atlantic Marine*. *See Advanced China Healthcare*, 901 F.3d at 1087. Due to the strong policy in favor of forum-selection clauses articulated in *Atlantic Marine*, the general rule is that "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63 (citations and internal quotations omitted). Accordingly, valid forum-selection clauses control unless the plaintiff makes a strong showing that:

> (1) the clause is invalid due to "fraud or overreaching," (2) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision," or (3) "trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court."

*Advanced China Healthcare*, 901 F.3d at 1088 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 18 (1972)).

None of these exceptions apply here. There is no evidence that the OANDA Defendants induced Ms. Tater to enter into the Customer Agreement through fraud or overreaching.[6] Ms. Tater alleges that she was "induced" by the OANDA Defendants to

---

[5] The court also agrees with the OANDA Defendants that the forum-selection clause applies to OANDA Corporation even though OANDA Corporation is not a party to the Customer Agreement. *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) (noting that "a range of transaction participants, parties and non-parties," can benefit from a forum-selection clause so long as the non-parties' alleged conduct is "closely related to the contractual relationship").

[6] The fact that the forum-selection clause was contained in a click through form contract has no bearing on its enforceability. *See, e.g.*, *Thomas v. Facebook, Inc.*, No. 118CV00856LJOBAM, 2018 WL 3915585, at *4 (E.D. Cal. Aug. 15, 2018) ("The principle articulated in *Carnival Cruise Lines*[*, Inc. v. Shute*, 499 U.S. 585 (1991)]—that forum selection

create an OANDA Canada account so that she could take advantage of certain insurance

benefits. (*See* Am. Compl. at 5.) But even if the act of encouraging Ms. Tater to open an

OANDA Canada account could be construed as "fraud" or "overreaching," Ms. Tater's

bald allegation is "not enough to overcome the strong presumption in favor of enforcing

forum selection clauses." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1141 (9th Cir.

2004) (finding insufficient evidence of overreaching where the only evidence submitted

was the plaintiff's assertion of overreaching); *see also Spradlin v. Lear Siegler Mgmt.

Servs. Co.*, 926 F.2d 865, 868 (9th Cir. 1991) (affirming decision to enforce forum-

selection clause because plaintiff failed "to come forward either here or in the district

court with anything beyond the most general and conclusory allegations of fraud and

inconvenience"). The court is not aware of any Washington statutes or judicial decisions

that articulate public policy grounds sufficient to disregard the forum-selection clause in

the Customer Agreement. Finally, because Ms. Tater can re-file her case in Canada,

applying the forum-selection clause will not deprive her of her day in court. Ms. Tater is

no stranger to Canada. She owned property in Canada, maintains a Canadian email

address, and initiated a complaint against OANDA Canada with Canadian regulatory

authorities. (*See* Am. Compl. at 5, 9-10; Therrien Decl. ¶¶ 8, 11, 14; *id.* Ex. D-E.) The

court sees no reason why Ms. Tater cannot pursue her claims against the OANDA

//

//

clauses in form contracts are presumptively enforceable—has been consistently and routinely
applied to forum selection clauses contained in click through user agreements on websites."
(citations omitted)).

Defendants in Canada.[7]  In fact, if Ms. Tater re-files her case in Toronto, OANDA

Corporation has agreed to treat service of process on OANDA Canada as valid service of

process on OANDA Corporation.  (Martell Decl. ¶ 5.)

In sum, the forum-selection clause in the Customer Agreement applies to this case

and the Supreme Court's guidance in *Atlantic Marine* instructs that that clause must be

enforced under the doctrine of *forum non conveniens*.  Thus, the court GRANTS the

OANDA Defendants' motion to dismiss and DISMISSES Ms. Tater's action without

prejudice.[8]  Because the court dismisses Ms. Tater's action on *forum non conveniens*

grounds, the court DECLINES to decide whether the court has jurisdiction over OANDA

Canada and whether Ms. Tater's complaint states a claim for relief under Federal Rule

12(b)(6).  (*See* MTD at 14-17.)

//

//

---

[7] Although the court is not aware of what the statute of limitations is for Ms. Tater's claims under the applicable Canadian law, the court must still dismiss even if Ms. Tater's case would be time-barred in Canada.  *See Advanced China Healthcare*, 901 F.3d at 1091 ("A court must dismiss a suit filed 'in a forum other than the one specified in a valid forum-selection clause,' even if it 'makes it possible for [plaintiffs] to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate.'" (quoting *Atl. Marine*, 571 U.S. at 66 n.8)).

[8] Although Ms. Tater has not requested leave to amend her complaint, the court concludes that leave to amend is not warranted here.  Courts may deny leave to amend where amended pleadings would be subject to dismissal.  *Finsa Portafolios, S.A. DE C.V. v. OpenGate Capital, LLC*, 769 F. App'x 429, 432 (9th Cir. 2019).  Here, given the court's conclusion that the transactions at issue arise under the Customer Agreement, any amendment Ms. Tater offered would be futile and dismissed for the same reasons that the court dismisses the current complaint.  *See, e.g.*, *id.* ("[The plaintiff] has presented no compelling argument that its amended complaint would not have been subject to the forum-selection clauses.  Thus, the amended complaint would have been subject to dismissal under the same forum non conveniens analysis as the initial complaint.").

**C.    Motion to Extend the Deadline to Join Parties and Motion to Compel**

The court has also reviewed Ms. Tater's motion for extension of time to extend the deadline to join parties and her motion to compel production of documents and concludes that neither motion impacts the *forum non conveniens* analysis.  (*See* 7/30/19 Mot. for Extension; Mot. to Compel.)  Even if the court granted Ms. Tater additional time to add parties, adding parties would not change the fact that Ms. Tater's allegations arise under an enforceable forum-selection clause.  As for the motion to compel, even if the court assumed that Ms. Tater's requests were valid under Federal Rule of Civil Procedure 34 and granted her motion, her discovery requests have little-to-no relationship to the motion to dismiss.  (*See* Mot. to Compel at 1-2); *see Young v. Wachovia FSB*, No. C11-0552JCC, 2011 WL 3022301, at *1 (W.D. Wash. July 22, 2011) (dismissing case despite pending discovery requests because discovery requests "appear to have no relation to the motion to dismiss").  Moreover, Ms. Tater did not request discovery or move to compel until long after her June 10, 2019 deadline to oppose the motion to dismiss had passed.  Ms. Tater's discovery requests were not emailed until July 5, 2019 and her motion to compel was not filed until July 31, 2019.  (*See* Mot. to Compel.)  Thus, even if the discovery she sought had some relevance to the motion to dismiss, she did not request it in time to offer it in opposition to the *forum non conveniens* argument.

Because neither Ms. Tater's motion for extension of time to extend the deadline to join parties nor her motion to compel production of documents would impact the outcome of Ms. Tater's case, the court DENIES both motions as MOOT.

*//*

# IV. CONCLUSION

Based on the foregoing analysis, the court DENIES Ms. Tater's motion for extension of time to oppose the motion to dismiss and for court-appointed counsel (Dkt. # 26), GRANTS the OANDA Defendants' motion to dismiss (Dkt. # 10), and DISMISSES Ms. Tater's action WITHOUT PREJUDICE. Because the court dismisses Ms. Tater's action on *forum non conveniens* grounds, the court DECLINES to decide whether the court has jurisdiction over OANDA Canada and whether Ms. Tater's complaint states a claim for relief under Federal Rule 12(b)(6). Finally, because the court grants the motion to dismiss, it also DENIES as MOOT Ms. Tater's motion for extension of the deadline to join additional parties (Dkt. # 34) and her motion to compel production of documents (Dkt. # 36).

Dated this 21st day of September, 2019.

JAMES L. ROBART
United States District Judge